The opinion of the Court was delivered by
Smith, C. J.[1]
This is an action of debt on a bond made by defendants as sureties of one Howard Phelps; with condition that Phelps, who was then in execution at tbe plaintiff’s suit, should continue a true prisoner within the limits of the prison at Haverhill, until he should be lawfully discharged, without committing any escape until such discharge. The defendants plead performance of the condition by Phelps. The plaintiff, in reply, assigns a breach; viz., escape from the limits, Oct. 17, 1805, 6 A. M.
Defendants, admitting the escape, rejoin that Phelps took the oath prescribed in the act for the ease and relief of persons imprisoned for debt, on Oct. 4, 1804, 1p.m., which was duly certified to the prison keeper; that he paid past charges, and continued a true prisoner within the limits till Oct. 17, *289 1805 ; that neither the creditor, nor any person for him, paid, weekly, 112 cents a week for his support, after he took the oath, until Oct. 17, 1805; and that thereupon he became discharged, and was on the same day discharged by the prison keeper, and went out of the limits as he lawfully might, (a)
The plaintiff, in his surrejoinder, admits, by not denying, all that is stated in the rejoinder, but attempts to excuse the non-payment of the money, or, in other words, to show that the debtor did not become discharged on Oct. 17, 1805, notwithstanding creditor’s neglect to pay for his support, by alleging that he paid for fifty-four weeks, that is, to Oct. 16, 1805, inclusive ; that he was ready, on that day, to pay the allowance for another week, but was prevented by the fraudulent acts of the debtor; namely, that the debtor, on Sept. 10, 1805, with intent to deceive and defraud the plaintiff of his debt, and to induce him to believe that he had committed an escape, and thereby induce him not to furnish money beyond the fifty-four weeks, i. e. to lodge money with the jailer on or before Oct. 16, 1805, gave out and caused to be reported that he was about to go out of the limits and go to Connecticut, and on the same day concealed himself in a swamp within the limits, and continued there, without the plaintiff’s knowledge, till Oct. 17, 1805; that plaintiff was, by these means, induced to believe, and did believe, that he had escaped, and so did not pay or advance any more money for the debtor’s support; and to this fraudulent conduct of Phelps defendants were privy.[1]
To this surrejoinder the defendants demur ; and the question is, whether this matter excuses the non-payment of the money, *290 and. induces a forfeiture of the bond by debtor’s departing from the limits on Oct. 17, 1805.
We will first consider the case as it would be if this plea were by Howard Phelps, or if defendants had practised, the fraud to which they are alleged to have been privy; i. e., told the lies stated in the surrejoinder, and concealed, or assisted to conceal, the debtor.
On Oct. 4, 1804, the debtor became and was discharged, unless money paid for his support; and, whenever there was no money in advance, he was discharged; i. e., on default or neglect to pay, on Oct. 16, 1805, 112 cents, the debtor was, in law, discharged immediately after that day had expired, and might lawfully go away, without forfeiting the bond, at any time after twelve that night.
But cases may easily be supposed where, by the conduct of the person for whose use the money was to be paid for support, the discharge would not attach, notwithstanding the words of the statute, though the money should not be lodged. Suppose, instead of the money being required to be paid to the prison-keeper for the use of the prisoner, it should have been payable to the prisoner himself, and he had refused to accept it; or suppose, as the law now is, that the debtor forbid the prison-keeper from receiving it. In these cases, the offer to pay would be equivalent to actual payment. Suppose the money payable to the, prisoner himself, and he should secrete himself, so that the creditor could not find him to pay or tender. This would be equivalent to actual payment. Suppose, as the law is, that the jailer and debtor should collude, so as to prevent payment; e. g., the jailer keeping out of the way, shutting up the house, and having-no agent at the jail, to whom creditor could pay the money. Suppose the debtor, finding the creditor coming with the money at eleven o’clock, P. M., on the last day, should rob him of the money; or unlawfully arrest him ; or procure him to be arrested, carried off, and so hindered from paying. Upon every principle of justice, this would excuse the nonpayment. The law would not permit the wrong-doer-to take advantage of his own wrong, to procure a discharge by such *291 means, or procure his dormant discharge to operate or take effect by such unjust means. The law enjoins on the creditor who would detain liis debtor in prison every thing he can do to support him ; but, if the debtor refuses the money, the creditor cannot compel him to take it; or, if the debtor himself prevent the payment, he cannot complain of the non-payment. There is, in that case, no default or neglect (the words of the statute) in the creditor, and there must be such before the prisoner becomes discharged. The case is analogous to that of bail. If they do not surrender the body of the principal, so that he may be taken in execution, they are themselves obliged to satisfy the judgment; but they may plead, in excuse for not surrendering the principal, that they were hindered from so doing by the acts of the creditor. He shall not, by any acts of his, abridge the rights of the bail. If he does, he shall not take advantage of the want of a surrender. 2 Manuscript Essays, Bail, 209, 211. In the case of Wingate v. Hayes, bail of Reed, decided at Strafford, September Term, 1808, 11 Manuscript Reports, 337, it was held, that, where the bail were prevented, by the acts of the creditor, from surrendering the principal, it was a discharge, and might be pleaded in excuse to the scire facias. There the creditor-had arrested the principal, and had him in execution, in an action of debt, on the same judgment, in Massachusetts. And yet our statute makes provision only for a discharge by surrender. The bail are in no fault. The creditor has put it out of the power of the bail to surrender, and therefore shall take no advantage of the want of surrender. It would seem reasonable to say that, if tlie non-payment happens through the fraud of the debtor, that the same consequences shall follow. Fraud vitiates every thing. 4 T. R. 337. This principle is applied ad hominem. He who is guilty of a fraud shall never be permitted to avail himself of it. If Phelps practised such fraud as prevented the payment of the money for his support, he shall not bo heard to complain of the nonpayment, nor shall he derive any advantage from it; and he on whom it was practised shall suffer as little injury as possible from it. Phelps may obtain his release by all legal and *292 honest means, and no means are legal that are not honest. But he shall not obtain his release by fraud. Suppose the debtor practise fraud, to obtain his release from the creditor. Such a discharge would neither avail him nor his sureties ; because the discharge would be void, and a void discharge is ■no discharge. For the same reason, if he practise fraud to prevent the payment of the money, in order that the discharge may come into operation, the end intended shall not be answered, it shall be as though the money had been paid.
If this be correct, the only question will be, Whether the surrejoinder states facts which, in law, amount to a fraud, facts which may have been presumed to have occasioned the nonpayment of the money ? The surrejoinder must state the means by which the fraud was committed ;[1] i. <?., it must state certain declarations and acts of the debtor which occasioned the non-payment of the money, and it must appear that these means were adequate to produce the effect. 3 T. R. 60.
The situation of the parties is to be considered. The debtor was in execution; and, having obtained a certificate of discharge, he was entitled to be liberated from prison, if the creditor failed to pay for his support. But he had no right to bring about or procure that failure, which was to free him from imprisonment, by fraud or deceit. The creditor was entitled to the body of his debtor in execution as long as he should be guilty of no default in the payment of the weekly allowance. The creditor had a right to pay. He has an interest in the payment, which was, in the eye of the law, valuable to him. The law presumes it may have a tendency to procure satisfaction of the debt. If it did not so presume, it would not permit it. It presumes, and that justly, that the tribunal who administered the oath may have been imposed upon. It is lawful for the creditor to retain the body on payment of the weekly allowance, in the same manner and for the same purpose as it was lawful and useful for him to imprison him at first. Imprisonment of the body is a means to compel payment of the debt. It follows that, if any one hinder him, it is a wrong, for which an action would lie. Suppose a stranger *293 prevent the payment by force or fraud. Suppose a stranger should inform the creditor, on Oct. 16, 1805, that Howard Phelps had escaped, when he knew he had not.
The acts hero alleged are false declarations of his intention to commit an escape, made Sept. 10, 1805, and the consequent concealment of his body till Octl 17, following ; and both are stated, in the surrejoinder, to have been done fraudulently, and with intent to deceive the plaintiff and defraud him of his debt; or, in other words, to produce neglect of paying the weekly allowance.
With respect to the false declarations of his intention to escape, standing alone, I think they would not be sufficient. Though it is immoral to utter a falsehood, yet it is not always actionable. An action cannot be supported for telling a bare, naked lie, knowing or not knowing it to be so, and without any intention to injure and deceive another person. But an action lies for every deceit which injures another. Now every lie is not a deceit, in legal contemplation, though every deceit comprehends a lie. To make a lie a deceit, it must be told with design to deceive and injure a particular person, (a) This was of that description ; but of itself, and independent of the after concealment of the person, it would not be an actionable fraud, because the declaration was of intention merely. The creditor ought not to confide in such declarations alone, unconnected with other acts. The intention never was carried into execution, and never was intended. The declarations made but a part of a system or plan of deception. Suppose the debtor never to have gone beyond the limits, but should *294 hire a person to inform the creditor that he had, and should furnish him with circumstances, so that a prudent, cautious man would give credit to the assertion, — we will suppose he even goes so far as to furnish an affidavit of the fact, — the creditor then omits to advance any more money, and the debtor leaves the prison ; creditor sues the bond, and the witness testifies truly. Would not this fraud estop the debtor from availing himself of the default or neglect to furnish money ? Here the debtor procured a falsehood to be told, and it is the same as if he told it himself. We will suppose it done with intention to deprive creditor of his right to retain the debtor in prison, and the creditor injured. Suppose, with the same intention, debtor declares to creditor that he has passed the limits, when he has not; that the bond is forfeited, when it is not.
Upon the whole, under this head, there are falsehoods, which would be a deceit or fraud, and which would estop the •debtor from taking advantage of the neglect to pay the money ; but the present standing alone is not of that description.
So, perhaps, the mere concealment would not be a fraud, with whatever view it was done. But it is impossible to entertain any doubt that the declaration of the intention to escape and the consequent concealment, coupled together, is an actionable deceit or fraud. If done by a stranger, it would subject him to an action. If by the debtor, it shall not avail him. He shall derive no advantage from it. The three ingredients to constitute a fraud, deceit, or actionable falsehood, concur; viz., a false declaration, accompanied with the act of concealment, done with an intention to deceive and injure, and actually attended with damage. 8 T. R. 58. (a)
It may be said that it was the folly of the creditor to confide in these declarations followed by these acts. We have admitted that it would be so as it respects the mere declarations of intention unaccompanied by any acts. But I think no such *295 folly is imputable to the creditor on the facts stated in the surrejoinder. The creditor had no means of detecting the deceit, or of arriving at certainty. He would be liable to an action of trespass if he were to attempt to search the whole prison-yard. The prison-keeper may have been ignorant of the matter. I do not know how, in many cases, the creditor could have better or stronger evidence than the creditor, in this case, had of the escape of his debtor. He was not to be seen within the limits for five weeks, and he had previously declared his intention of going away. If it be said the creditor might still have lodged the money with the jailer, the answer is, He might have so done, but would a prudent man do it; was he bound to do it; had he any motive for doing it ? After an escape, if he lodged money, I do not know that he could recover it back. When the debtor has concealed himself, I think it is, at least, such an act as estops him from taking advantage of the non-payment of the money, which his own acts have rendered apparently useless and unnecessary. Here the creditor did not deceive himself. He was guilty of no negligence; but the debtor beguiled him, and he did not pay.
If the facts stated in the surrejoinder had been traversed, to charge defendants, jury must have found that there was an intention to deceive and injure, that the facts and declarations existed, and that they were followed by the consequence stated, i. e. that they occasioned the default or neglect to pay the weekly allowance. When this is the caso, I feel no difficulty in saying that the debtor practised a fraud, and that the creditor is not chargeable with gross negligence, or, indeed, with any negligence, in giving credit to the deception, or in being deceived. It would be foily in the creditor to neglect paying because the debtor had, in conversation, said be should forfeit bis bonds, or because he did not see him in the jail or yard for a time. But it was not folly to believe that he had escaped, when he had said he intended to go, and actually disappeared, and was not seen for the space of five weeks. The common prudence of man is not sufficient to guard against such deceit. The law does not refuse relief against deceit, in cases where it *296 is possible to guard against it by a very high, degree of care and circumspection, but where the ordinary and usual care and diligence is not sufficient. If it did, the law would be precisely what knaves would wish it to be.' For knaves are certainly wiser in their generation than honest men. Such laws would not be adapted to mankind as they are, but would be holding up a bounty for cunning, and encouragement to knavery. ‘All laws stand on the best and broadest basis which go to enforce, not weaken, moral and social duties.
It may be said that a debtor in jail may innocently amuse himself with uttering declarations of his intention to go away when he has no such serious intentions, merely that he may tease his creditor, and that, if he prefers a swamp to the village at Haverhill, he may lawfully do it; his creditor cannot complain that he prefers one part of the jail-yard to another. All this may be true, butT say, nevertheless, that a man may not assert that which he knows will deceive ; that he cannot do these things with intention to injure his creditor, who is actually injured thereby, and, after all, take advantage of these acts and derive a benefit from this very injury. Such acts are as repugnant to law as they are to morality. The intention here is yery material. These are not words merely thrown out at random (or going into a swamp without any intention of hurting any one), but which the creditor was foolish enough to act upon and give credit to. The quo animo is a great part of the gist of the action. It is this which constitutes these declarations and these acts a fraud, a deceit, which the law abhors. This wicked view, or fraudulent intention, is stated in the surrejoinder and admitted by the demurrer.
We have now considered the case as it would stand if this plea were made by Howard Phelps, or as it would be if defendants were alleged to have made the false declarations and done the acts iu this plea imputed to Howard Phelps. But it is here stated that defendants were privy and knowing to the false declarations and the matter of concealment: not that they were parties or actors in the fraud.
It is very certain no action could be maintained against the defendants merely for being privy to the matters charged in the *297 surrejoinder. Fraud vitiates every thing; but this is only to be applied ad hominem. He who is guilty of a fraud shall never be permitted to avail himself of it. 4 T. R. 887, 338. Generally speaking, an innocent person shall not suffer by the fraud of another. But let us see how the defendants are to be charged. They undertook that Howard Phelps should not commit an escape until lawfully discharged. Now suppose he forge a discharge, and escape. Suppose he fraudulently, Or by force, obtain one, and then escape. Sureties will be answerable for the escape, though not for the unlawful act. So, here, defendants undertook that Howard Phelps should not go, unless creditor make default or neglect payment of the weekly allowance. In law here has been no default. In law, under the circumstances of this case, creditor not obliged to pay; debtor not discharged by the non-payment. Here was an escape when no lawful discharge. The discharge dated Oct. 4, 1804, never did attach or take effect.
To show that sureties are affected by the acts of the debtor, the principal, and answerable when no payment in fact made, we may instance, again, the case of refusal to receive on tender, or avoiding tender, by debtor when the money [for his support] payable to him. Here the sureties would doubtless be liable, though no actual payment. So in the case of payment prevented by force or fraud. ' In short, sureties undertake that the debtor shall remain a true prisoner till discharged, or till default of payment. In those cases there is no default.
Judgment for plaintiff(a)

 [As the nature of the pleadings appears from the opinion of the Court, a fuller statement contained in the manuscript is here omitted.]

 Should not defendant, in Ms rejoinder, have stated how long the plaintiff did pay?

 In the fuller statement of the pleadings, the place of concealment is described as “ a certain solitary and unfrequented swamp, within the limits of said prison-yard, distant 180 rods from the prison.” The complicity of the defendants is thus alleged: “ And the plaintiff further says, that, of the said fraudulent concealment, secretion, and deception, the said Parks and Bush, the defendants, were then and there, on said tenth day of September, 1805, well knowing, and were privy to the same.”

 But see Hoitt v. Holcomb, 1851, 23 N. H. 535.

 See Mr. Justice Buller, in Pasley v. Freeman, 3 T. R. 56. The same judge once laid down the doctrine in broader terms; viz., that, if one man tells another a falsehood, by which he is injured, the deceived person has his remedy by an action. Pearson v. Morgan, 2 Bro. Ch. 389. Bnt it seems now holden that there must be the intention to deceive, or a falsehood is not actionable. See Haycraft v. Creasy, 2 East, 92, by three judges against the Chief Justice, that if a person assert another was worthy of credit, of his own knowledge, when he was not so, yet, if the assertion were made bona fide, and with a belief of the truth of it, it is not actionable. Three things must concur: a falsehood, told with design to injure, and actual injury the consequence.

 To charge defendant for false assertion as to the circumstances of a third person, it must appear that the lie was told for the purpose of imposing on the plaintiff, and that plaintiff, relying on the information, was deceived. See Peake (Day), 226 and note (cases cited).

 See, as to prison bonds, 2 Johns. Cas. 205; Chip. 25; 2 G. Bacon, 521-52-1. Discharge fraudulently obtained countermandable.
A discharge from the prison rules, under insolvent act of Virginia, although obtained by fraud, is a discharge in due course of law; and, upon such discharge, no action can be maintained on the prison bond. Simms v. Slocum, 3 Cranch, 300; Slocum v. Simms, 5 Cranch, 308. If the magistrate granting the discharge incompetent, discharge wholly void (incompetent on account of interest). Ammidon v. Smith, 1 Wheat. 447.